I am here on behalf of a minor, B. Q., because of the conduct engaged in by the defendant who was his teacher in class. Although my client has an Arabic name, the teacher referred to him as Bill. The date was October 24, 2017, and the defendant was a certified public school teacher who walked into his 7th grade class with children ages 12 or 13 in a kindergarten through 8th grade campus. At that time, he circulated his curriculum, which he had created the night before. What he created was, in part, from a website, which is an anti-Muslim, pro-Christian website called BillionsBibles.org, that listed out a number of, 23 actually, items which were part of his curriculum that he created. Counsel, we've all read the brief, so we know what your allegation is there. Can you point to any case that definitively holds that a teacher violates a student's establishment clause rights by distributing material that denigrates the practice of a particular religion? Yes. Okay, please do so. Yes. I believe that that would start with Lee v. Weissman. I believe that that would talk to the issues that were created by the court in Edwards, which talk about and focus specifically on elementary school students. There is no case that says a teacher walked in and created curriculum that talked about denigrating the culture. There are cases from 1987, for example, in Edwards, where the court talked about the focus of elementary school. Let me just tell you one of the problems that I have. The cases that you cite are, for the most part, from district courts and from outside the Ninth Circuit, without indicating any disrespect for any of those courts. They, of course, are not binding on us. Do you have any Ninth Circuit case or cases that you believe most closely resemble the facts in this case? I believe that this court has issued a decision in Brown v. Woodland, which talk about the Even accounting for only a small percentage of words in a larger text may qualify as governmental action that directly, immediately advances and disproves a religion and thus violates the Establishment Clause, and that was from 1994. Is that your best case? That is one of them. I also believe that Pelosa, which is a 1994 case from the Ninth Circuit, which talks about a high school teacher, and it talks about what a high school teacher can and cannot do because they can't come in and be a loose cannon. The Ninth Circuit recently, in 3, we'll call it, addressed the issue of the process that the State Board of Education and the California Department of Education go through to create curriculum and the advice and directives they get. They get information from the public. They get information from lawyers. They get information from everybody before they create curriculum. Now I know counsel, and I think the district court views those cases as dissimilar because they don't come from the perspective of the student, but the reality is those entities exist and they have laws. They have rules. They have Education Code 220, Education Code 51500, which are designed to say to all educators, including the defendant in this case, this is what you can do. This is what you can't do. Let's take that as a given. You've got instructions in the Education Code from the local rules, but does that establish, if somebody violates that, does that establish a constitutional violation? You, of course, are making an allegation here that they're asserting qualified immunity. I know the standard very well as to what you have to do to overcome that. What I'm looking for is something that overcomes the qualified immunity finding of the district court, certainly the fact that somebody is not supposed to teach from particular materials or to say certain things may bring discipline to the person, but does not necessarily mean that a constitutional violation has occurred from the perspective of the student. What is your best case or cases that helps you overcome the qualified immunity position? I think there are several cases, Your Honor. One from the Ninth Circuit, which was in late 2018, called Bonavert v. City of Clarkson and held that the law may apply with obvious clarity to the specific conduct in question even though the very action in question has not previously been held unlawful. You're obviously different prongs. One of them is if something is an obvious constitutional violation, is that your position here that this, what occurred, was an obvious violation? You don't need to have a case that's right on point? Is that your position? Yes, Your Honor. This is, I believe that the cases, there's a difference in what we often see, which is a Fourth Amendment scenario involving police officers, where things are very fact-specific and cases are, you know, clogging the courts daily, they're in front of you, where people can develop what can and cannot happen. In this particular case, for example, the court obviously has the information. If a teacher can walk in and do that, present this, teach the way he did, provide the YouTube, and then the court looks at us, analyzes it, not from the three methodologies that have been espoused by the Supreme Court, either Lee or Lynch, but only the Lemon Test, and then says, well, you don't have a case that clearly says what the California Department of Education found to be a violation of California, two different California statutes, the directives that they have sent forth to all educators, including Mr. DeCote specifically. What happens is we come here, the court says, or we go to the district court, and the district court says, there is no case just like this. There will never be a case just like this, because there can never, there has to be a first every place, and this is not a close case. This is not a case where it's some offhand comment or statement that's made by the defendant in the middle of the class. This is planned curriculum that he created and presented to the entire student body, and then was endorsed and ratified by the district when they said, this is okay? Hey, counsel, let me ask you about a case from, I think it was 2011, CF versus Capistrano Unified. Yes. It seems to me this is a tricky case for you, so I want to hear your response. That's a case where the Ninth Circuit found for the school district based on qualified immunity, not exactly the same as this case, I agree with you, but there are some similarities. What is the case since that time that would have put the teacher here on notice that there would be a constitutional violation? I believe that, first off, I think the difference, to answer the first part of the question, the big difference in the case is, in that case, there were a statement by a teacher in the middle of class. That's not this case. This is curriculum that the teacher created that is, on its face, anti-Semitic, not neutral, and pro-Christianity. And the case, in terms of establishing it, I believe Torlakson 3 obviously does, but in between 2011 and 2018, if you want to take your time and rebuttal to answer that one. I will look for that case, but because I believe that it is not a case that is similar, it doesn't detract from, it doesn't say that what Mr. DeCote did is okay. It doesn't say that you get to ignore the California Department of Education frameworks. It says that in this particular situation with a statement, we're not going to find a constitutional violation. That is not curriculum. Well, let me follow up on Judge Owen's question, and is it your position, going back a little bit to what you said before, that a violation by a teacher of the guidelines and the education code is itself an obvious establishment clause violation? In other words, we don't have to go with Pearson here and a nearby case. You're saying this is so obvious, we don't need that. Is that your position? Yes. I think if we had a case where a teacher walked in, created anti-Islamic curriculum, certainly we would give it to you no matter where it was from. We try to satisfy the court, the district court, who was inquiring about specific cases. But I would urge that under HOPE, for example, this court has continued to look at issues of in certain situations, you're just not going to have the amount of cases. If we look at the cases in this establishment area before the Ninth Circuit, we basically have two cases, the one that the court asked about is one where there's, I believe, two of the decisions, Orlikson has three decisions, one on the 12B6 motion, one on the motion for summary judgment, and then one on the appeal that this court addressed. And so it is because there are so, now, I understand that the courts do not have to say state law is sufficient, and it is certainly not the focus of the constitutional inquiry. But I think we do ourselves a disservice when we say that the California Department of Corrections did not spend time trying to make sure that the rules that they set out were constitutional, which is what Orlikson said. But when they go through that entire process and they give direction, it is not something that we should not consider. And... Do you want to save the balance of your time for rebuttal? It's entirely up to you. We just have a little over two minutes left. Thank you. So I got you to do, okay? Right. Okay. Let's hear then from Ms. Sarkis. Good morning, Your Honors. May it please the court, Nadia Sarkis on behalf of Alexander Dukok. I won't belabor what the Qualified Immunity Doctrine is all about because I'm sure you're well familiar with it. But the case law says that controlling precedent must place the question beyond debate and squarely address the specific context of the case. In other words, it has to be such that every reasonable official would understand that his conduct is unconstitutional. And that's why the Supreme Court has said that when the test is properly applied, it protects all but the plainly incompetent or those who knowingly violate the law. And when you apply that test here, it becomes very obvious that Dukok is entitled to qualified immunity because when it comes to the Establishment Clause, there's nothing clear about it. The Supreme Court hasn't been able to decide on a governing standard. And even among Establishment Clause cases, what amounts to unconstitutional disapproval of religion in the classroom is particularly unsettled. And I think the closest case out there, which the court has already alluded to, is CF versus Capistrano Unified School District. And in that case, the court said that at some point, what a teacher says in the classroom may cross the line and may amount to unconstitutional disapproval of religion. But the teacher in that case got qualified immunity because there is no precedent that defines where that line is. And that's still true today. And that's why, like the teacher in CF, Dukok is entitled to qualified immunity. We think the trial court correctly decided this case and would ask this court to affirm. So counsel, let me ask you a hypothetical because I agree with you that CF is a problematic case for the plaintiffs here. But I can imagine a situation where, let's say the reverse happened here, where a teacher required his students, his female students, to wear burqas in class and said, if you're a woman, I am a Muslim. This is my belief. If you are female in class, you must wear a burqa. And that's what he required his students to do. And he said, if you don't wear a burqa, you're going to get an F in this class. So would that be so obvious that that would be problematic? Or would that still be swept up in qualified immunity? So I mean, I think there's a difference between saying something, it's obvious that something is just outrageous and morally wrong versus saying that it's obviously unconstitutional. Those facts are much more extreme. And I think that a court in that circumstance could say, that clearly crosses the line. And that is unconstitutional. Although the case law is so unclear that I think even there, you would have to exercise some sort of, you'd have to draw lines and explain where that line is. But even with that, that would be the first case. And if that teacher raised qualified immunity, because there is no prior case law, I still think he would get qualified immunity. But the court could admonish going forward that if other teachers do that, that crosses the line and that violates the constitution and you do not get qualified immunity. But there is a line of cases, I'll call it the hope line of cases from the Supreme Court. And our court has cited hope, I think three times this year in public decisions saying that sometimes there are situations where things are just so obviously wrong that you don't need a particular decision from a Article III court to say so. And so help me out with that. Why doesn't that doctrine apply in this case? So that's true. So hope said that there is a subset of cases where a constitutional violation is so obvious that there doesn't have to be case law in all fours. But the Supreme Court has since said that that is a very narrow exception. And I think the DC versus Wesby case talks about the narrowness of that exception. And this court also has said that that is a very narrow exception. And the fact that something is obviously wrong doesn't necessarily, I think the Jessup case talks about that. Even if a police officer stealing money is obviously wrong, that doesn't mean it's obviously unconstitutional. Maybe a teacher telling all female students in a class to wear burkas is obviously, maybe that fits into that narrow exception. But this case doesn't. Your opposing counsel has suggested, if I understood him correctly, that a knowing violation by a teacher of the, shall I say, Department of Education guidelines and education code statute is per se an obvious violation. What's your response to that? So I don't think that's right. Qualified immunity is a question of whether it's obvious or it's a question of federal statutory law and constitutional law. So whether there's a state law violation or a violation of internal procedures doesn't speak to qualified immunity. And this court has already addressed that. I think in the case versus Kitsap County Sheriff's Department decision, it's 249 F3rd 921. So I don't think that's correct. And also, speaking to the obviousness question, another point that I wanted to raise, and it's referred to both in Torlakson and in Noonan, the primary effect has to be disapproval of religion, but it's looking at the curriculum as a whole. So what happens one day in class is different than looking at the curriculum as a whole. But here, I really think the constitutional, there's two different prongs of the analysis. There's whether it's unconstitutional and whether there is controlling precedent that clearly establishes the law. And here, even if you assume that Dakote crossed the line, there's no clearly established law. And so he is entitled to immunity. Unless it's obvious. Unless it's obvious, but that's just such a... I gather your opposing counsel, indeed, if I understand it correctly, seems to concede that Pearson isn't satisfied here. You know, at least the first prong of Pearson is not satisfied. So it's either as obvious or they lose. Is that your understanding of his position? His position? Sorry, I think I misheard it. That's okay. What I understood him to say, in effect, is that Pearson, the two prongs of Pearson, the first one is he cannot be satisfied. He seems to acknowledge there's no case that's close enough to give a fair warning. And given that circumstance, they lose unless the case is obvious. Is that your understanding? I think that's his position, yes. He'll tell us if we're wrong about it. And your view is that this is basically not even close to being, in quotes, obvious, in quotes. No, because the question is not whether this was wrong. The question is whether this amounts to unconstitutional disapproval of religion in the classroom. And there's really there's no case law that defines that. And it's really not an easy question, because the government is entitled to criticize religion. And the fact that someone takes offense at that criticism does not, in and of itself, violate the Establishment Clause. Unfortunately, I'm very familiar with the Jessup case, having written it. I hated it. But the reality is there's state law that says it's wrong. And of course, it's morally wrong for police to steal stuff. But there was no case law, none at all. We didn't find it was obvious. The Supreme Court denied cert. Does that help us analyze the nature of what we're dealing with here as far as the obviousness question? I think so. I mean, in terms of the obviousness cases in the Ninth Circuit, I know that there's the AD decision where there was a police officer who killed someone without any legitimate law enforcement objective whatsoever. And that was considered to be so obvious that there didn't need to be case law on all fours. But I think in Jessup, you analyze that decision and said, this is not that case. That may have been obvious, but police officers stealing money, it doesn't reach that level of obviousness. So where exactly that obviousness line is, too, is a little bit unclear. But I think with the Establishment Clause, there is nothing obvious about it. It's one of the murkiest areas of law out there. And the Supreme Court decisions year after year, they can't even decide a standard. The plaintiffs can't have much hope and hope. I don't think so. And I think there are other district courts' decisions that have sort of struggled with this issue where there's an Establishment Clause claim where something seems maybe somewhat obvious, like the Tearpot case, where there was a municipality that put a sign up and said, this church welcomes you and a picture of a Bible. It seems pretty clear that's maybe not the best thing to do. But the Establishment Clause is such a confused area of law that the court said that qualified immunity was appropriate. And there are several courts that have come to that conclusion because that area of law is so confused. Counsel, let me ask you this. Assume for a moment that there is no Establishment Clause violation, or at least there's qualified immunity to do so. I would assume that there are methods where parents, if they're concerned about what a teacher is doing, can grieve that in a sense through whatever the school district's procedures are or under state law of some kind? I think that's right. And I think that's a really important point. This isn't a question of qualified immunity or nothing can be done. In this case, the teacher was disciplined for his conduct. The principal was terminated. The teacher was later terminated. The student went through the various channels and sought administrative relief from the California Department of Education and got all of the administrative remedies that he sought. So this is not a case where he has no recourse. Well, he was terminated because he was looking at pornography. Well, that's the allegation. I don't know. Yeah. But he was disciplined as a direct result of this event. Right. Other points? No, I mean, I don't have, unless you have other questions for me, I feel like. Do either of my colleagues have additional questions for Ms. Archer? Nope. Thank you. Thank you very much. I appreciate it. So your opposing counsel has a little rebuttal time. So let's hear from him. Thank you, Your Honor. First, I do believe that this is so obvious without any case at all. Someone should know that this violates the Constitution and that a teacher who is certified and has been given the, understands the law as it exists since the 70s and 80s. There is fair warning. There was fair warning that things had to be neutral. Things couldn't be denigrated. It's not like he said, here's 12 things that are good about Islam and here's 12 things that are bad. There were 23 things that were bad. Okay, counsel, I want to be sure I understand your position on this. I understood you to mean that you acknowledge there's no case close enough to satisfy Pearson. You're relying entirely on the obviousness of the establishment clause violation. Is that correct? I'm relying on the obviousness of the violation as, but based on cases like Edward's that talk about neutrality, cases that from the United States Supreme Court and this court have said, you cannot have things that denigrate. You cannot pick one religion over the other. How do you square that with our case in Jessup where the police, I don't want it to happen or not, but they were alleged to have stolen some goods and we found it was not a constitutional violation because of qualified immunity. How does that impact your analysis in this case? Well, when I, as a former prosecutor, when I read the book, I said, how do we get there? And then when I read it, I understood the difference between in that particular situation, what is a crime and what is morally wrong is not necessarily a constitutional violation by the officers who had taken items on behalf of the court through a search warrant. And I understood the analysis in our case. Our case is very straightforward and simple. The law is not confusing. You cannot denigrate. You have to be neutral. You should follow the California Department of Education, which this court continually supports and counsel with respect. Your time is up. But let me ask my colleague. Does either have additional questions for this gentleman? All right. Thank you very much for your argument. We appreciate it. Both counsel, the occasion of you versus the court is submitted. Thank you.
judges: M. Smith, Owens, Cardone